**IN THE UNITED STATES DISTRICT COURT**
**FOR EASTERN DISTRICT OF NEW YORK**

**TY'LEACE HINTON**, individually and on behalf of all others similarly situated,

Plaintiff,

v.

**SID TOOL CO, INC. d/b/a/ MSC INDUSTRIAL SUPPLY** and **MSC INDUSTRIAL DIRECT CO., INC.**,

Defendants.

Case No.: 2:26-cv-2043

Hon.:

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Ty'Leace Hinton, by and through her undersigned counsel, who hereby brings this Collective and Class Action Complaint against Defendants, Sid Tool Co., Inc d/b/a MSC Industrial Supply and MSC Industrial Direct Co., Inc., and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and common law.

2. Defendants jointly own and operate an international metalworking and maintenance, repair and operations ("MRO") products and services distribution company.[1]

[1] https://www.mscdirect.com/about-msc (last visited March 21, 2026).

3. In supporting its global customer base, Defendants maintain a team of "dedicated support" staff that provide "expert customer care" committed to helping customers find what they need.[2]

4. Defendants have customer care teams and fulfillment centers across the United States.[3]

5. Defendants employed hourly call center employees in the United States at their Customer Support Centers in Melville, New York and Davidson, North Carolina. They also employed hourly call center employees at their Customer Care Centers in Jonestown, Pennsylvania; Southfield, Michigan; Fernley, Nevada; Elkhart, Indiana; Hanover Park, Illinois; and Mableton, Georgia. Upon information and belief, Defendants also employed hourly call center employees across the U.S. in hybrid or remote-work positions.

6. Defendants' hourly call center employees had a number of different job titles that included, but were not limited to, Customer Care Representative – Omnichannel; Customer Care Representative – Enterprise; Customer Care Support Representative – Commercial Sales; Customer Crae Resource Agent; Program Manager; Sales Support Representative; Product Bid Support Specialist (collectively referred to as Customer Service Representatives, or "CSRs")[4].

7. Defendants classified their CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

8. Regardless of the specific job title, all CSRs: (1) were paid on an hourly basis; (2) were classified as non-exempt employees; (3) used the same timekeeping system(s); (4) used many (if not all) of the same computer programs; (5) were subject to the same relevant timekeeping and

[2] *Id.*
[3] https://www.mscdirect.com/about-msc/msc-locations (last visited March 21, 2026).
[4] https://mscdirect-jobs.dzconnex.com/ (last visited March 21, 2026).

attendance policies; and (6) had the primary job duty of providing call center based assistance to Defendants' existing and prospective customers.

9. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff and Defendants' CSRs, are homogenous, and it issued guidance to alert and condemn an employer's non-payment of an employee's necessary boot-up and call-ready activities. [5] ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."). Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

10. Defendants violated the FLSA and common law by systematically failing to compensate their CSRs for work tasks completed before and during their scheduled shifts, when they were not logged into Defendants' timekeeping system. This timekeeping procedure resulted in CSRs not being paid for all overtime hours worked and in workweeks in which CSRs worked overtime, for straight time.

11. More specifically, Defendants failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to the start of their scheduled shifts.

12. Plaintiff seeks a declaration that her rights and the rights of the putative FLSA Collective and Class members were violated, and a judgment awarding unpaid wages, liquidated damages, attorneys' fees, and costs, along with all other relief to which they are entitled. Plaintiff further seeks such remedies to make the workers whole for the harm they suffered and to ensure

[5] DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), (July 2008), *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers*

that Defendants do not subject future employees to the same unlawful practices.

## **JURISDICTION AND VENUE**

13. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under the FLSA, 29 U.S.C. §§ 201, *et seq*.

14. Additionally, this Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

15. Defendants' annual sales exceed $500,000 and they have more than two employees, therefore the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

16. Defendants' employees, including Plaintiff, engage in interstate commerce – including, but not limited to utilizing telephone lines and internet – and therefore, they are also covered by the FLSA on an individual basis.

17. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

18. This Court has personal jurisdiction over Defendants because Defendants conduct business within this District and maintain their principal place of business in this District.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants are incorporated in the State of New York and conduct business within this District via their principal place of business.

## **PARTIES**

20. Plaintiff is a resident of Michigan.

21. Plaintiff worked for Defendants with the job title Customer Care Representative-Omnichannel from January 8, 2024 through December 11, 2025. This was a hybrid role based out of Defendants' Southfield, Michigan office location. Plaintiff worked two or three days remotely from her home.

22. Plaintiff's most recent hourly rate was approximately $23.00.

23. Plaintiff executed her Consent to Join form, attached hereto as **Exhibit A**.

24. According to the MSC website, the company was founded and incorporated in the 1940s as Sid Tool Co. in New York.[6]

25. Also apparent from the MSC website is that since at least the 1960s, Sid Tool Co. and MSC ("Manhattan Supply Co., Inc") have been doing business jointly and/or interchangeably. *Id.*

26. As of 1998, Sid Tool Co./MSC Customer Support Center/Corporate Headquarters was in Melville, NY. *Id.*

27. In 2006, MSC acquired J&L Industrial. *Id.*

28. On information and belief, J&L Industrial was headquartered in Southfield, Michigan and expanded MSC operations in both the United States and United Kingdom.

29. In the early 2010s, MSC acquired Rutland Tool, American Tool Supply ("ATS"), and ATS Industrial Supply (expanding its Western United States presence) as well as Barnes Distribution North America (extending into Canada). *Id.*

30. In 2013, MSC opened a large customer support center in Davidson, North Carolina. *Id.* MSC growth continues, with additions of subsidiaries across the United States expanding its business offerings and sales.

[6] https://www.mscdirect.com/about-msc/our-history (last visited March 26, 2026).

31. Presently, Defendant Sid Tool Co., Inc. d/b/a MSC Industrial Supply Co. is a New York corporation with a principal executive office listed at 515 Broadhollow Road, Melville, NY 11747. It has an address for purposes of service registered as: Corporation Service Company, 80 State Street, Albany, NY 12207.

32. Defendant Sid Tool Co., Inc. is registered in New York with the assumed names "Deco Tool, An MSC Company"; "Class C Solutions Group"; "Warranty Registrations Services Co." and "MSC Industrial Supply Co."

33. Defendant MSC Industrial Direct Co., Inc. is a New York corporation with a principal executive office listed at 515 Broadhollow Road, Melville, NY 11747. It has an address for purposes of service registered as: Corporation Service Company, 80 State Street, Albany, NY 12207.

34. Defendants collectively own and operate these (and many other) business entities which all do business as one enterprise: MSC.

35. At all times relevant to this Complaint, Defendants were a common enterprise and joint "employers" of Plaintiff and the other CSRs as defined by the FLSA, 29 U.S.C. §203(d) and 29 C.F.R. 791.2(a).

## GENERAL ALLEGATIONS

36. Throughout their employment with Defendants, Plaintiff and the other CSRs were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

37. Defendants' hundreds, if not thousands, of CSRs, provided customer service and support to Defendants' customers throughout the United States.

38. Defendants compensated CSRs on an hourly basis and classified them as non-

exempt employees under the FLSA.

39. Upon information and belief, Defendants maintained documents that demonstrate the promised hourly wage for each CSR, including but not limited to: offer letters, paystubs, and/or other payroll records.

40. Plaintiff and Defendants' CSRs typically worked five (5) days each week and forty (40) or more hours per week.

41. There were many instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

42. Defendants provided training to CSRs on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; how to load and log into their computer programs at the beginning of the day; the importance of attendance and schedule expectations; and Defendants' policies.

43. The training that all of Defendants' CSRs received was substantially, if not entirely, the same and Defendants' CSRs, including Plaintiff, were subject to the same relevant policies and procedures.

44. At all relevant times, Defendants controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

45. To the extent that Defendants may have had written policies that required their employees to be paid for all hours worked, including overtime, the reality is that Defendants did not follow these policies, which resulted in CSRs, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

46. Defendants required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs and applications in order to perform their job

duties.

47. Defendants issued work schedules to Plaintiff and other similarly situated CSRs that strictly dictated Defendants' work expectations, specifically "phone ready" requirements.

48. More specifically, Defendants instructed Plaintiff and other similarly situated CSRs to be "phone ready" (meaning logged into and have ready all computer programs and applications they utilized as part of their job duties) the moment their scheduled shifts started. This required Defendants' CSRs to load and log into their essential work-related computer programs and applications ***before*** the start of their shifts and ***before*** they were allowed to clock in so they could be prepared to field Defendants' customers' inquiries the moment their shifts began.

49. During the boot-up and login process, Defendants' CSRs sometimes experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

50. At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and their CSRs in order to pressure them into performing pre-shift work off-the-clock.

51. These policies and procedures, which were utilized for purposes of evaluating CSR job performance, effectively enforced the "phone ready" policy and required CSRs to perform off-the-clock work.

52. Pursuant to these policies and procedures, Defendants' CSRs, including Plaintiff, faced warnings, coaching, poor performance evaluations, performance improvement plans ("PIPs"), other disciplinary action, and termination for failing to be "phone ready."

53. All of Defendants' CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the CSRs' work and they could not

perform their jobs without them.

54. The pre-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into their computers and applications and programs directly benefited Defendants and was integral and indispensable to the CSRs' job responsibilities.

55. At all relevant times, Defendants were able to track the amount of time Plaintiff and other CSRs spent in connection with the pre-shift activities; however, Defendants failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching their contracts with their CSRs.

56. Further, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendants to establish that they acted in good faith.

57. Defendants knew or should have known that the FLSA requires employers to compensate employees for all hours worked during the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a); *see also* 43 P.S. § 333.104.

58. Defendants also knew or should have known that 29 U.S.C. § 207 requires non-exempt employees who work more than forty (40) hours in a workweek to be paid overtime at one and one-half times their regular rate of pay, which includes compensable boot-up and call-ready work.

59. Nevertheless, Defendants failed to pay Plaintiff and all other current and former CSRs overtime compensation at one and one-half times their regular rates of pay for the off-the-clock work described herein.

60. Despite knowing Plaintiff and all other CSRs performed this pre-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

61. Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

62. Defendants were aware that Plaintiff and the CSRs worked more than forty (40) hours in multiple workweeks because Defendants' own payroll and scheduling records documented the hours they were scheduled to work and the hours for which Defendants issued payment.

63. Because Defendants required their CSRs, including Plaintiff, to perform pre-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendants. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

### A. Unpaid Pre-Shift Boot-Up and Call Ready Work

64. Defendants' CSRs were trained and required to start up and log into Defendants' computer network and software programs in order to access the information necessary to perform their job duties and be considered "phone ready" *before* "punching into" Defendants' timekeeping system.

65. The pre-shift boot-up and login process was the same whether CSRs worked remotely or in-office and generally consisted of the following steps:

a. Waking up the computer;

b. Logging into Windows with a username and password;

c. Connecting to Defendants' virtual private network ("VPN") using two-factor authentication;

d. Logging into Microsoft Teams;

e. Launching Oceana software (for communicating with customers and sales representatives via email or phone call);

f. Launching Tella software (which contained scripts, FAQs and information on Defendants' processes for customer interactions);

g. Launching Salesforce (used for special orders, returns, creating labels, and getting approval for high-discount transactions);

h. Launching Avaya (Defendants' phone system through which CSRs marked themselves "available" to take calls);

i. Launching Defendants' Intranet through a web browser; and

j. Navigating to Defendants' Intranet timesheet webpage and clicking "clock- in"

66. The boot-up and login process described above took approximately ten (10) to fifteen (15) minutes per shift.

67. If CSRs arrived at their computers immediately prior to their scheduled shifts, they were in danger of discipline for being late because they could not complete the required pre-shift work necessary to be "available" in Avaya when their scheduled shifts began, and Defendants considered them tardy.

68. Defendants expected Plaintiff and all other CSRs to respond to customer inquiries and handle calls for the entirety of their scheduled shifts. This expectation, coupled with Defendants' attendance and adherence policies, necessarily required CSRs to perform work off-the-clock in order to be fully prepared and "available" at the start of their shifts.

69. The pre-shift off-the-clock time Plaintiff and all other CSRs spent booting up and logging in directly benefited Defendants and was integral and indispensable to the CSRs' job responsibilities.

70. Despite knowing Plaintiff and all other CSRs perform this pre-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

**B. Time Rounding**

71. Generally, employers may record employees' starting or stopping times to the nearest five minutes or to the nearest one-tenth or quarter of an hour. 29 C.F.R. § 785.48(b). The regulations provide these rounding practices may be used presuming the arrangement averages out so the employees are fully compensated for all the time they actually work.

72. However, an employer's policy of rounding off is permissible only if the rounding occurs so employees are not disadvantaged over time. 29 C.F.R. § 785.48. Rounding off practices that resulting significant discrepancies in recordkeeping or in a failure to compensate employees for time actually worked are improper.

73. At all relevant times, though the use of computer software systems, Defendants recorded Plaintiff and other CSRs' time clock punches on a daily basis.

74. Throughout her employment with Defendants, Plaintiff punched in on Defendants' timekeeping software systems at the beginning of her shifts and punched out at the end of her shifts.

75. Defendants maintained an unlawful rounding policy which rounded employee punch-in and punch-out times to the nearest quarter of hour in a way that inured to Defendants' benefit. As a result, Defendants failed to pay Plaintiff and other CSRs for all time worked.

76. At the end of her shifts, when Plaintiff remained on a call with a client past her scheduled end time to complete the call, she was not compensated for any time worked beyond her shift if she clocked out between one (1) and seven (7) minutes after its conclusion.

77. In each workweek where Plaintiff worked forty (40) hours or more, the rounding policy resulted in an unlawful deprivation of the overtime wages required by the FLSA.

78. On information and belief, the unlawful pay practices evidenced in Plaintiff's

earnings statements were committed against every hourly employee in every workweek.

79. Defendants' time-rounding practices almost invariably inured to their benefit.

80. Defendants' time-rounding practices were intended to systematically underpay all of their hourly employees, and Defendants were unjustly enriched as a result.

81. Defendants' policy and practice of rounding Plaintiff and other CSRs' punch-out time resulted in a substantial amount of uncompensated work over the past three years.

82. Defendants knew or should have known that all of Plaintiff and other CSRs' hourly work is compensable under the FLSA. Likewise, Defendants knew or should have known that their rounding policies and practices violated the FLSA.

83. As a matter of common business policy, Defendants failed to pay Plaintiff and other CSRs for all work performed as set forth herein. They were not paid their promised hourly wage for all work performed, and they were not paid overtime, as required by the FLSA, in weeks in which they worked more than forty (40) hours.

84. As a result of these *prima facie* FLSA violations, Defendants are liable to Plaintiff and other CSRs for unpaid wages, liquidated damages, reasonable attorney's fees, costs, interest, and any other relief deemed appropriate by the Court.

## **COLLECTIVE ACTION ALLEGATIONS**

85. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of herself and on behalf of:

> *All current and former hourly CSRs who work or have worked for Defendants at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

86. Defendants are liable under the FLSA for, *inter alia*, failing to properly

compensate Plaintiff and others similarly situated.

87. Consistent with Defendants' policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all premium overtime compensation in workweeks during which they worked more than forty (40) hours.

88. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

89. Defendants were aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

90. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

b. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, worked for Defendants' benefit.

91. Defendants' unlawful conduct was (and is) widespread, repeated, and consistent.

92. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the CSRs described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan

(namely, Defendants' practices, policies, or plan of not paying their CSRs for all overtime wages in violation of the FLSA); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendants and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

93. Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes several thousands of members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of members of the FLSA Collective should be readily available from a review of Defendants' personnel, scheduling, time, and payroll records.

94. The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

95. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of herself and on behalf of:

> *All current and former CSRs who work or have worked for Defendants anywhere in the United States during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

96. *Numerosity:* The members of the Rule 23 Nationwide Class are so numerous that joinder of all members would be impracticable, and the disposition of their claims as a class action will benefit the parties and the Court. Plaintiff reasonably estimates there are hundreds, if not

thousands, of Rule 23 Nationwide Class members, each of whom should be easy to identify from Defendants' computer systems and personnel and payroll records.

97. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Nationwide Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-shift time the Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable;

b. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract and/or resulted in Defendants being unjustly enriched; and

c. The proper measure of damages sustained by the Rule 23 Nationwide Class.

98. *Typicality:* Plaintiff's claims are typical of those of the Rule 23 Nationwide Class members in that Plaintiff and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from Defendants' same policies, practices, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

99. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

100. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for

Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 Nationwide Class members, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds, or thousands, of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Rule 23 Nationwide Class members' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

101. The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendants maintain a payroll system that will allow the class, wage, and damages issues in the case to be resolved with relative ease.

102. Because the elements of Rule 23(b)(3) are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

103. Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES**

104. Plaintiff re-alleges and incorporates all previous paragraphs herein.

105. At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

106. Defendants were engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

107. At all times relevant to this action, Plaintiff and the FLSA Collective members were "employees" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

108. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

109. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

110. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

111. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

112. The FLSA also requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

113. At all times relevant to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees the federally mandated overtime compensation for all work performed over forty (40) hours per week.

114. The off-the-clock work performed every shift by Plaintiff and the FLSA Collective members was an essential part of their jobs. These activities and the time associated with these activities was significant.

115. As a result of Defendants' unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of overtime wages in violation of the FLSA.

116. Defendants could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities but did not.

117. Defendants' violations of the FLSA were knowing and willful.

118. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the FLSA Collective.

119. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

120. Plaintiff re-alleges and incorporates all previous paragraphs herein.

121. At all times relevant to this action, Defendants had binding and valid contracts with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties

Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendants.

122. Evidence of these contracts include Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendants failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

123. For example, Defendants offered to compensate Plaintiff at a wage certain per hour if she agreed to perform services for Defendants as a CSR. Plaintiff accepted Defendants' offer and performed her duties as a CSR in reliance on the offer.

124. Defendants breached their contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

125. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period.

126. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift work described herein.

127. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

128. Defendants can easily ascertain the amount of damages owed to Plaintiff and the

Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

129. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

130. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour and failed to compensate them for all hours worked, including (i) straight-time hours in workweeks where fewer than forty (40) hours were worked (i.e., "gap time") and (ii) unpaid straight-time wages for hours worked up to and in excess of forty (40) hours in workweeks where Plaintiff and the Rule 23 Nationwide Class members worked overtime when considering the off-the-clock work described herein (i.e., "overtime gap time").

131. Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

132. As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT III
## RULE 23 NATIONWIDE CLASS ACTION
## UNJUST ENRICHMENT

133. Plaintiff re-alleges and incorporates all previous paragraphs herein.

134. This Count is pled in the alternative to Count II *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

135. At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendants' benefit.

136. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

137. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

138. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

139. Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

140. Despite this, Defendants did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

141. Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

142. Defendants were unjustly enriched by the retention of monies received pursuant to

the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

143. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

144. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a. An Order certifying this case as a collective action and authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above (Count I);

b. An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

d. An Order designating Plaintiff to act as the representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

e. An Order declaring that Defendants violated the FLSA and its attendant regulations as set forth above;

f. An Order declaring that Defendant's violations of the FLSA were willful;

g. An Order declaring that Defendants breached their contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each

hour they worked at the pre-established (contractual) rate for each hour they worked; OR in the alternative, an Order declaring Defendants were unjustly enriched by the off-the-clock work they required Plaintiff and the Rule 23 Nationwide Class to perform;

h. An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collective, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

i. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

j. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k. An Order awarding such further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her undersigned attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: April 7, 2026

Respectfully Submitted,

*/s /Jonathan Bernstein*
Jonathan Bernstein
ISAACS BERNSTEIN, P.C.
2108 Yardley Road
Yardley, PA 19067
Telephone: 917-693-7245
jb@lijblaw.com

Alana A. Karbal (P82908)
Paulina R. Kennedy (P84790)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
akarbal@sommerspc.com
pkennedy@sommerspc.com

**pro hac vice applications forthcoming*

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*